# UNITED STATES DISTRICT COURT
### for the
Northern District of New York

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched or identify the person by<br>name and address)*<br>(A) A MOTOROLA XT2413V CELLULAR TELEPHONE<br>SEIZED FROM THE PERSON OF DAVID PASTORELLO<br>ON MAY 8, 2025, FURTHER DESCRIBED IN<br>ATTACHMENT A-1<br><br>(B) A TCL CELLULAR TELEPHONE SEIZED FROM<br>THE PERSON OF DAVID PASTORELLO ON JULY 29,<br>2025, FURTHER DESCRIBED IN ATTACHMENT A-2 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.   5:25-sw-188 (MJK)<br><br>USAO No. 2025R00588 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
(A) A MOTOROLA XT2413V CELLULAR TELEPHONE SEIZED FROM THE PERSON OF DAVID PASTORELLO ON MAY 8, 2025, FURTHER DESCRIBED IN ATTACHMENT A-1

(B) A TCL CELLULAR TELEPHONE SEIZED FROM THE PERSON OF DAVID PASTORELLO ON JULY 29, 2025, FURTHER DESCRIBED IN ATTACHMENT A-2

located in the Northern District of New York, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachments B-1 and B-2.

The basis for the search under Fed. R. Crim. P. 41(c) is (check one or more):
☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2422(b); | Enticement of a Minor, - As to Subject Devices 1 and 2 |
| 18 U.S.C. § 2252A(a)(2)(A); and | Possession of Child Pornography - As to Subject Device 2 |
| 18 U.S.C. § 2252A(a)(5)(B) | Distribution of Child Pornography  - As to Subject Device 2 |

The application is based on these facts:
See Attached Affidavit.

☒ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Jenelle Corrine Janowicz, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by Video Conference *(specify reliable electronic means)*.


Date:    _August 8th, 2025_

_____
*Judge's signature*


City and state:    _Syracuse, NY_

Hon. Mitchell J. Katz, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: <br><br> (A) A MOTOROLA XT2413V CELLULAR TELEPHONE SEIZED FROM THE PERSON OF DAVID PASTORELLO ON MAY 8, 2025 <br><br> (B) A TCL CELLULAR TELEPHONE SEIZED FROM THE PERSON OF DAVID PASTORELLO ON JULY 29, 2025 | Case No.  5:25-sw-188 (MJK) |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR AN SEARCH WARRANT**

I, Jenelle Corrine Janowicz, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 4.1 of the Federal Rules of Criminal Procedure for warrants to search the following:

a. One (1) Motorola XT2413V cell phone, IMEI 355179434601863, seized from David PASTORELLO's person on May 8, 2025 (SUBJECT DEVICE 1); and

b. One (1) TCL cell phone, IMEI 016500004699782, seized from David PASTORELLO's person on July 29, 2025 (SUBJECT DEVICE 2)

(collectively, the SUBJECT DEVICES).  The SUBJECT DEVICES are currently in the possession of the Federal Bureau of Investigation ("FBI").  Located within SUBJECT DEVICE 1, I seek to seize evidence, fruits, and instrumentalities of criminal violations of Title 18, United States Code, Section 2422(b) (enticement of a minor).  Located within SUBJECT DEVICE 2, I seek to seize evidence, fruits, and instrumentalities of criminal violations of Title 18, United States Code,

Section 2422(b) (enticement of a minor), as well as violations of Title 18, United States Code, Sections 2252A(a)(2)(A) and 2252A(a)(5)(B) (possession and distribution of child pornography). The evidence sought is described in attachments B-1 and B-2.

2.     I have been employed as a Special Agent of the FBI since June 2012 and am currently assigned to the Albany Division, Binghamton Resident Agency.  As a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued. While employed by the FBI, I have investigated federal criminal violations related to cybercrime, child exploitation, enticement of minors, and child pornography.  I have gained experience through training by the FBI and everyday work relating to conducting these types of investigations. I have participated in the execution of several federal search warrants in child sexual exploitation investigations.

3.     The facts in this affidavit come from my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.     Based on my training, experience, and the facts a set forth in this affidavit, there is probable cause to believe that PASTORELLO has committed violations of 18 U.S.C. § 2422(b) (enticement of a minor), as well as violations of 18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(a)(5)(B) (distribution and possession of child pornography); that evidence of PASTORELLO's violations of enticement of a minor will be found on SUBJECT DEVICE 1; and that evidence of PASTORELLO's violations of enticement of a minor and distribution and possession of child pornography will be found on SUBJECT DEVICE 2.  There is also probable cause to search SUBJECT DEVICE 1, fully described in Attachment A-1, for evidence, instrumentalities,

contraband, and/or fruits of PASTORELLO's violations of enticement of a minor, as further described in Attachment B-1; as well as probable cause to search SUBJECT DEVICE 2, fully described in Attachment A-2, for evidence, instrumentalities, contraband, and/or fruits of PASTORELLO's violations of enticement of a minor and distribution and possession of child pornography, as further described in Attachment B-2.

## **PROBABLE CAUSE**

*Background on David Pastorello*

5.     David PASTORELLO ("PASTORELLO") is a 42-year-old male who resides in Ithaca, New York.  Since 2004, PASTORELLO has had a history of arrests and incidents involving children and the sexual exploitation of minors. Based on his criminal history, PASTORELLO has been involved in the following:

a.   On June 9, 2004, PASTORELLO was arrested for NY PL 26.10, Endangering the Welfare of a Child.

b.   On July 30, 2014, PASTORELLO was convicted of NY PL 245.00, Public Lewdness—Intentionally Expose One's Private Parts in Public. This conviction was in full satisfaction of a charge for Criminal Trespass 3rd Degree: School or Children's Camp.

c.   On February 5, 2024, PASTORELLO was convicted of NY PL 260.10, Endangering the Welfare of a Child.

d.   On August 10, 2024, PASTORELLO was arrested for NY PL 120.70, Attempted Luring a Child into a Vehicle.

e.   On November 18, 2024, PASTORELLO was arrested for NY PL 263.16, Possessing a Sexual Performance by a Child Less Than 16 Years of Age.

f.   On July 24, 2025, PASTORELLO was convicted for NY PL 235.22, Disseminate Indecent Material to Minors: 1st Degree.  PASTORELLO has not yet been sentenced for that offense.

*Seizure of Subject Device 1*

6.      On January 1, 2025, New York State Police ("NYSP") was dispatched to XX XXXXXX Road, Apt. XXXX, Ithaca, New York for a harassment report.  At the residence, NYSP encountered Victim 2, an adult whose identifying information is known to law enforcement. Victim 2 reported that PASTORELLO had been communicating with his stepdaughter, Minor Victim 1 ("MV1"), using the Snapchat smartphone social media and telecommunications application.  MV1 is a 12-year-old female child whose identity and exact age are known to law enforcement.  Victim 2 stated that in the messages, PASTORELLO attempted to convince MV1 several times to sneak out of MV1's residence and join PASTORELLO in his vehicle.

7.      PASTORELLO was formerly in a relationship with MV1's mother, Victim 1 (an adult whose identifying information is known to law enforcement).  Victim 1 told NYSP that after MV1 reported to Victims 1 and 2 that PASTORELLO had been communicating with MV1, Victim 1 took MV1's cell phone, monitored the incoming messages, and occasionally responded to the messages. Victim 1 stated that she hoped to catch PASTORELLO "in the act," so she, pretending to be MV1, messages PASTORELLO agreeing to sneak out of the house and meet PASTORELLO at a nearby bus stop.  Following this exchange, Victim 2 went to the bus stop where PASTORELLO had directed MV1.  Within thirty minutes, Victim 2 observed PASTORELLO's white vehicle drive by.  Victim 2 told NYSP that he recognized PASTORELLO as the driver. Next, Victim 1 saw PASTORELLO's white Honda Accord, which she recognized from past interactions with PASTORELLO, drive past her residence multiple times.

8.      NYSP directed Victim 1 to photograph the messages between PASTORELLO and MV1.  Victim 1 did so and investigators reviewed the messages.  Law enforcement observed that MV1 had been receiving messages from a Snapchat profile called "Biggest."  The Snapchat user identifies himself as "Dave" (PASTORELLO's first name).  PASTORELLO asks MV1 to sneak out of her residence and walk to a bus stop.  During the course of the conversation, PASTORELLO asks MV1 for a "[cat emoji] pic" and later a "psy pic" [pussy pic].  Based on my training and experience, I believe PASTORELLO was requesting MV1 to send him a picture of her vagina.

9.      NYSP investigators verified that a white 2007 Honda Accord was registered to PASTORELLO in New York state.  On May 6, 2025, NYSP investigators presented an application for search warrants to the Hon. Joseph R. Cassidy, a Tompkins, New York, County Court Judge sitting as a local criminal court.  The application sought warrants to search PASTORELLO's person; white Honda Accord; and Ithaca, New York, residence for evidence of New York state offenses "that will constitute, substantiate, or support violations of Sections 263.15 (Promoting a Sexual Performance of a Child), 263.16 (Possessing a Sexual Performance by a Child) and 260.10 (Endangering the Welfare of a Child)," including computers and Internet-capable devices.[1]  The affidavit further outlined affiant NYSP Investigator Zachary Niedeerriter's training and experience relating to child sexual abuse investigations; described how individuals who are sexually interested

---

[1] The instant application for a search warrant seeks authorization to search SUBJECT DEVICE 1 for evidence, fruits, and instrumentalities of criminal violations of Title 18, United States Code, Section 2422(b) (enticement of a minor).  Therefore, the scope of the instant search warrant is arguably more limited than that of the May 6, 2025, state search warrants.  The affidavit presented in support of the state search warrant does describe how PASTORELLO was arrested in 2024 for possessing 47 images depicting child sexual abuse on a different cell phone.  However, the evidence outlined in support of the state search warrant did not describe recent conduct involving possession of child pornography.  In an abundance of caution, the instant application seeks authorization to search SUBJECT DEVICE 1 only for evidence related to the federal offense of enticement of a minor, which was committed by PASTORELLO on January 1, 2025.  If evidence relating to the possession or distribution of child pornography is discovered on SUBJECT DEVICE 1 in the course of executing the proposed warrant, investigators will pause examination of that device and will seek additional process relating to evidence of violations of 18 U.S.C. § 2252A.

in children use the Internet to obtain and store child sexual abuse material; and describes how electronic data can be saved on cell phones and other electronic devices. Judge Cassidy reviewed the application and approved the warrants. The May 6, 2025, affidavit and search warrants are included herein as Attachment A and are incorporated by reference.

10.    On May 8, 2025, NYSP investigators prepared to execute the search warrants. Investigators waited in the parking lot of PASTORELLO's Ithaca, New York, apartment building. Investigators saw PASTORELLO exit his apartment and took PASTORELLO into custody on an outstanding bench warrant issued by the Tompkins County Court related to a pending criminal case. Incident to that arrest and pursuant to the May 6, 2025, search warrants, PASTORELLO's person was searched. SUBJECT DEVICE 1 was located in his pocket. Subsequent to its seizure, SUBJECT DEVICE 1 was stored at an NYSP facility at 1220 Washington Avenue, Albany, NY. Despite having authority from the May 6, 2025, search warrants to conduct a digital forensics analysis of SUBJECT DEVICE 1, NYSP did not do so. FBI took custody of SUBJECT DEVICE 1 on August 7, 2025.

11.    The facts set forth in Paragraphs 6 through 9, above, were all known to law enforcement at the time of the presentment and issuance of the May 6, 2025, state search warrants. Your affiant does not seek to search SUBJECT DEVICE 1 based on any facts discovered after the presentment and issuance of those warrants. Probable cause exists to search SUBJECT DEVICE 1 for evidence of violations of 18 U.S.C. § 2422(b) based solely on facts and information known to law enforcement as of May 6, 2025.

*Pastorello's July 29, 2025, Conduct*

12.    On July 29, 2025, at approximately 3:22 am, Victim 1 reported to law enforcement that PASTORELLO entered her residence in Ithaca, New York, without permission, with the

intention of having sexual intercourse with MV1. Victim 1 reported that PASTORELLO contacted MV1 on Snapchat using the username "Get XXXXXX Pregnant" [the redacted word is MV1's first name] a few hours prior. MV1 reported the communication to Victim 1, Victim 2 (the residence's other owner), and Adult 1 (another adult whose identifying information is known to law enforcement). Adult 1 took possession of MV1's cell phone and reviewed PASTORELLO's Snapchat communication with MV1.

13.     Over the course of the next 1-2 hours, Adult 1 observed PASTORELLO send dozens of communications to MV1. Adult 1 occasionally responded to the messages. Adult 1 also took pictures of all of PASTORELLO's Snapchat communications to preserve them. During the course of Snapchat communication, Victim 1 and Adult 1 observed PASTORELLO repeatedly and actively solicit MV1 to engage in sexual activities with him.

14.     At approximately 3:00 am, PASTORELLO arrived at the residence and entered through the unlocked front door. A minor 9-year-old child ("Child 1"), whose identity and exact age are known to law enforcement, was asleep on the couch at that time and woke up when PASTORELLO entered the residence. Child 1 is familiar with PASTORELLO, due to descriptions provided by his or her parents and family members from previous incidents involving PASTORELLO. Child 1 recognized PASTORELLO based on a distinctive star tattoo PASTORELLO has in the middle of his forehead. Child 1 reported that PASTORELLO looked at Child 1, put his finger over his lips in a "hushing" motion, and then dragged his thumb across his throat in what is commonly used as a threatening gesture.

15.     Child 1 stated that PASTORELLO continued into the apartment and began walking down the hallway, but quickly turned and exited the residence. Child 1 ran into the master

bedroom, where Victim 1 and Victim 2 were located.  Child 1 screamed that "Dave was here." Victim 2 exited the residence in an attempt to locate PASTORELLO but did not find him.

16.     Following this incident, on July 29, 2025, MV1 was forensically interviewed. During the interview, which was observed by your affiant, MV1 stated that she knew PASTORELLO because he had a previous relationship with a family member.  MV1 said that family member had ended the relationship with PASTORELLO last year. On New Years Eve (December 31, 2024), PASTORELLO messaged MV1's Snapchat account. PASTORELLO identified as "Dave," used sexual language, and requested that MV1 sneak out of the house to meet him to engage in sexual activities. MV1 did not respond but provided the information to a parent. MV1 blocked PASTORELLO's Snapchat account.  As discussed above, Victim 1 and Victim 2 reported the incident to law enforcement.

17.     MV1 next stated that on July 29, 2025, MV1 received a message on Snapchat from Snapchat user "Get XXXXXX Pregnant". PASTORELLO again identified himself as "Dave," told MV1 that he had seen MV1 walking by the gym, and again utilized sexually explicit language and requested that MV1 meet him to engage in sex acts. MV1 said that PASTORELLO sent MV1 images of his penis and what MV1 believes was an image of a teenager having sex.

*Review of Snapchat Messages*

18.     Your affiant has reviewed the aforementioned images taken of the Snapchat communications between PASTORELLO and MV1 from July 29, 2025.  PASTORELLO utilized a Snapchat account with username "Get Pregnant [XXXXXX]!" At the outset of the message thread, PASTORELLO identifies himself as "Dave."  During the course of the messages, PASTORELLO attempts to persuade MV1 to engage in oral and vaginal sex with him. For example, PASTORELLO states—

   a. "Do you want to kiss maybe bone a little. I won't cum in u. If u don't want. I'll pull
   out"

   b. "U want to bone inside your house? Who's there. We can fuck there if u want to
   fuck. Who's up. It's gonna be two hours to walk…can we kiss. Maybe more."

   c. "I'm coming ok? U want this right? Can u wear a shirt with no panties? It will make
   it easier for us."

   d. "Or if mom is not home we can fuck inside. Will she be home. It's ok I have
   condoms."

19.     PASTORELLO also repeatedly instructed MV1 to delete his messages.    For
example, he stated: "Don't save. XXXXXX [MV1] please. Undave so I know u want this? Unsave.
?. Please I want to so bad. Your so pretty. I mean that can we kiss maybe have sex? Only if u want
to. Blowjob at least? Please?"

20.     During the course of the messages, PASTORELLO also repeatedly asked MV1 if
she wanted to see pictures of his penis.  At one point during the exchange, the operator of MV1's
account (believed to be Adult 1 at that time) responded, "Yes."  PASTORELLO sent to who he
believed to be MV1 six images of an adult male penis.  At that same time, PASTORELLO also
distributed to who he believed to be MV1 two images constituting child pornography, described
as follows, and available for the court's review upon request—

   a. An image depicting a minor female, approximately 8 years old, performing oral sex
   on an adult male penis.

   b. An image depicting a minor female, approximately 8 years old, nude from behind,
   leaning against a structure with her legs spread and displaying her genitals in a lewd
   and lascivious manner.

*Pastorello's Arrest and Seizure of Subject Device 2*

21.    On the afternoon of July 29, 2025, PASTORELLO sent text messages to Victim 1 apologizing for the events earlier in the day and asking that Victim 1 not contact law enforcement. Victim 1 was directed by law enforcement to provide a phone number to PASTORELLO so he could contact who he believed to be MV1 in order to apologize. The phone number provided to PASTORELLO was in reality a number owned and operated by law enforcement.

22.    Within a few minutes of receiving the aforementioned phone number, PASTORELLO began communicating with a law enforcement officer acting in an undercover capacity via text message.  PASTORELLO initially used phone number 607-XXX-6067 and then switched to 607-XXX-3826. During the course of the text message conversation, PASTORELLO again attempted to entice who he believed to be MV1 to engage in sex acts and made plans to meet MV1 later that evening at a park outside her apartment complex.

23.    Also on July 29, 2025, this Court approved a criminal complaint alleging that PASTORELLO had violated 18 U.S.C. §§ 2422(b) and 2252A(a)(2)(A) (Case No. 5:25-MJ-218 (MJK)).  This Court also issued a warrant for PASTORELLO's arrest.

24.    Between approximately 8:30 and 9:00 p.m. that evening, PASTORELLO indicated via text message to the undercover law enforcement agent that he would be leaving his apartment shortly to either walk or take the city bus to the pre-determined location to meet MV1.  At approximately 9:00 p.m., law enforcement observed PASTORELLO walking in the direction of the meet location not far from his residence and was taken into custody. At the time of his arrest, PASTORELLO had SUBJECT DEVICE 2 on his person. SUBJECT DEVICE 2 was secured and is now in FBI custody.

## COLLECTORS OF CHILD PORNOGRAPHY

22.     Individuals who are interested in child pornography may want to keep the child pornography files they create or receive for additional viewing in the future. Individuals who collect child pornography may go to great lengths to conceal and protect from discovery their collections of illicit materials.  They often maintain their collections in the privacy of their homes, on computers, on external hard drives, on cellular telephones, or in other secure locations.  Because the collection reveals the otherwise private sexual desires and intent of the collector and represents his most cherished fantasies, the collector rarely, if ever, disposes of his collection.  The collection may be culled and refined, but, over time, the size of the collection tends to increase.  Individuals who utilize a collection in the seduction of children or to document that seduction treat the materials as prized possessions and are especially unlikely to part with them over time.

23.     Individuals who collect child pornography may search for and seek out other like-minded individuals, either in person or on the Internet, to share information and trade depictions of child pornography and child erotica as a means of gaining status, trust, acceptance and support. This contact also may help these individuals to rationalize and validate their deviant sexual interest and associated behavior. The different Internet-based vehicles used by such individuals to communicate with each other include, but are not limited to: text messages, video messages, electronic mail, email, bulletin boards, IRC, chat rooms, newsgroups, instant messaging, and other vehicles.

24.     Individuals who collect child pornography may maintain stories, books, magazines, newspapers and other writings, in hard copy or digital medium, on the subject of sexual activities with children, as a way of understanding their own feelings toward children, justifying those feelings and finding comfort for their illicit behavior and desires. Such individuals may keep these materials because of the psychological support they provide.

11

25.    Individuals who collect child pornography may keep names, electronic mail addresses, cellular and telephone numbers, or lists of persons who have shared, advertised, or otherwise made known their interest in child pornography or sexual activity with minor children. These contacts may be maintained as a means of personal referral, exchange, and/or commercial profit.  This information may be maintained in the original medium from which it was derived.

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

26.    As described above and in Attachment B, this application seeks permission to search for records, in whatever form they are found, including data stored on a computer, hard drive or other electronic/digital storage media. Thus, the warrants applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

27.    *Probable cause*. I submit that if a computer or storage medium is found during the course of the execution of the search warrants, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

a.    Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.  Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d.  Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

e.  Based upon my training and experience and conversations with other law enforcement personnel, I am aware that a number of computer storage devices are quite small and portable, and can be easily hidden on a person or easily concealed in other locations. For instance, digital cameras can store numerous digital images on a disk approximately the size of a postage stamp. In addition, thumb drives, which are approximately the size of a pocket knife, can hold numerous images and computer videos.

13

28.   *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrants, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any seized storage medium because:

a.   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b.   As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and

14

movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrants at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that is or was connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline

information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.  A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrants.

e.  Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of

16

counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

f.  I know that when an individual uses a computer to possess, receive, or distribute child pornography, the individual's computer or device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The computer is an instrumentality of the crime because it is used as a means of committing the criminal offense. The computer is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that a computer used to commit a crime of this type may contain: data that is evidence of how the computer was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

29.    *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrants. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

a.  The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence

of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrants call for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrants can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b. Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c. Variety of forms of electronic media. Records sought under these warrants could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

## CONCLUSION

30.    As stated above, there is probable cause to believe that PASTORELLO has committed violations of 18 U.S.C. § 2422(b) (enticement of a minor), as well as violations of 18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(a)(5)(B) (distribution and possession of child pornography);

18

that evidence of PASTORELLO's violations of enticement of a minor will be found on SUBJECT

DEVICE 1; and that evidence of PASTORELLO's violations of enticement of a minor and

distribution and possession of child pornography will be found on SUBJECT DEVICE 2.    I

respectfully request that a warrant be issued authorizing the search of the SUBJECT DEVICES

for evidence, instrumentalities, contraband, and/or fruits of the offenses as outlined above.


ATTESTED TO BY THE APPLICANT IN ACCORDANCE WITH THE REQUIREMENTS
OF RULE 4.1 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE.


Respectfully submitted,

Jenelle Corrine Janowicz
Special Agent
Federal Bureau of Investigation


I, the Honorable Mitchell J. Katz, United States Magistrate Judge, hereby acknowledge
that this affidavit was attested to by the affiant by videoconference on August 8th 2025, in
accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.


Hon. Mitchell J. Katz
United States Magistrate Judge

19

**APPLICATION FOR SEARCH WARRANT**
**(Section 690.35 CPL)**

## *Tompkins County County Court*

### CITY OF ITHACA, COUNTY OF TOMPKINS, STATE OF NEW YORK

To the Presiding Magistrate, Town of Tompkins County Court, County of Tompkins, State of New York, sitting as a local criminal court:

I, Investigator Zachary R. Niederriter, a Police Officer of the State of New York, to wit, an Investigator with the New York State Police, assigned to NYSP Ithaca / 1850 Dryden Rd, Freeville, NY 13068, do hereby state there is probable cause to believe property of a kind or character described in Section 690.10 of the Criminal Procedure Law may be found in or upon a designated or described place, vehicle, or person.

**A.   THE PROPERTY REFERRED TO AND SOUGHT TO BE SEIZED, SEARCHED, EXAMINED AND HELD (Sec 690.10 NYS CPL)**

1.   Is believed to have been used to commit an offense against the laws of this state, to wit, violations of Sections 263.15 (Promoting a Sexual Performance by a Child), 263.16 (Possessing a Sexual Performance by a Child) and 260.10 (Endangering the Welfare of a Child) of the Penal Law of the State of New York; and

2.   Constitutes evidence and tends to demonstrate an offense was committed in this state, to wit, violations of Sections 263.15, 263.16 and 260.10 of the Penal Law of the State of New York.

**B.   DESIGNATION OR DESCRIPTION OF PLACE, VEHICLE, OR PERSON TO BE SEARCHED**

The person(s) of David J. Pastorello, born December 11th, 1982, the residence, and any occupants therein, located at 390 Floral Ave, Apt 5, in the City of Ithaca, County of Tompkins, State of New York, including any areas the occupant(s) may have custody or control of such as, but not limited to, the basement, attic, garage, other curtilage, and vehicles on the property; and any computers and electronic devices, as described below, that may be located during execution of the search warrant.

The residence, pictured below in images 1 and 2, is described as 390 Floral Ave. Ithaca, NY, 14850. Image 3 depicts David Pastorello.



IMAGE 1



IMAGE 2



IMAGE 3

C.   **THE PROPERTY REFERRED TO AND SOUGHT TO BE SEIZED, SEARCHED, EXAMINED AND HELD IS DESCRIBED AS:**

1.  All computers, computer programs, storage media, computer data and / or computer network

information as those terms are defined in Article 156.00 of the Penal Law.

2. All computers, central processing units, internal and external drives, internal and external storage units or media, terminals, and video display units, together with peripheral equipment such as keyboards, printers, modems, network routers and switches, scanners, and digital cameras.

3. All computing or data processing software, or data including, but not limited to hard disks, optical discs, floppy disks, magnetic tapes, and integral random-access memory (RAM) or read-only memory (ROM) units which may reveal evidence which substantiates violations of the aforementioned New York State Penal Law Statutes.

4. All Internet capable devices, such as cellular phones, tablet computers, wearable computers, smart phones, smart televisions, media players, gaming systems that allow access to the Internet and allow for the transmission of data in violation of Sections 263.15, 263.16 and 260.10 of the New York State Penal Law.

5. The following records and documents, whether printed copy, contained or stored on a computer, cellular device, optical disc, magnetic tape, diskette, photo-optical device, cellular phone, tablet computer, wearable computer, smart phone, smart television, media player, and / or gaming system that allows access to the Internet, or other storage medium:

   a. All access numbers, passwords, personal identification numbers (PINS), logs, notes, memoranda and correspondence relating to computers, electronic and voice mail systems, Internet addresses, and / or related contacts.
   b. All computing or data processing literature, including, but not limited to printed copy, instruction books, notes, papers, or listed computer programs, in whole or in part.
   c. All audio or video cassette tape recordings, books, magazines, periodicals, or other recorded or printed material, the possession of which constitutes a violation of Sections 263.15, 263.16 and 260.10 of the Penal Law of the State of New York.
   d. All photographs, videos, and documents depicting sexual conduct by a child and / or minors engaged in sexually explicit conduct.
   e. Internet history, including search terms and visits to websites that offer visual depictions of minors engaged in sexually explicit conduct.
   f. All records or correspondence relating to the possession, transmission, collection, trade, or production of the aforementioned photographs, videos, and / or documents whether printed or in the form of Short Message Service (SMS), Multimedia Messaging Service (MMS), chats, and Instant Messages (IM) such as iMessages, Facebook Messenger, Snapchat, etc.
   g. All child erotica, including photographs of children that are not sexually explicit, drawings, sketches, fantasy writings and notes, and evidence assisting authorities in identifying such children.
   h. Records showing the use or ownership of Internet accounts, including evidence of Internet usernames, screen names, device attributes, and other Internet artifacts that may assist with user or owner identification, including documents and records, in any form or format, regarding the identity of any person using the identity "Biggest" and "Biggest Peniz".
   i. Computer records and evidence identifying who the particular user was who received, downloaded, possessed, or viewed any child sexual abuse material found on any computer or computer media (evidence of attribution), or who attempted to do any of the foregoing, and how the computer was used to effectuate that activity.

## D.    DEFINITIONS

The following non-exhaustive list of definitions applies to this affidavit:

- Biometrics: The measurement and statistical analysis of people's unique physical and behavioral characteristics. The technology is mainly used for identification and access control, or for identifying individuals who are under surveillance. The basic premise of biometric authentication is that every person can be accurately identified by his or her physical or behavioral traits.

- Biometric Characteristics: Any distinguishing characteristics of an individual that can be measured and extracted from a biometric sample for the purpose of biometric identification. Biometric characteristics may include a fingerprint, signature, voice pattern, ear form, DNA or other distinguishing characteristic.

- Biometric Locks: Locks that grant access based on a unique body trait of the person trying to open it. This can mean either retina, fingerprint, or facial characteristics.

- Child Erotica: Materials or items that are sexually arousing to persons having a sexual interest in minors, but are not, in and of themselves, obscene or illegal.  In contrast to " child sexual abuse material," this material does not necessarily depict minors in sexually explicit poses or positions.  Some of the more common types of child erotica include photographs that are not sexually explicit, drawings, sketches, fantasy writing, and diaries.

- Child Pornography: Disused.  See Child Sexual Abuse Material.

- Child Sexual Abuse Material: Any visual depiction of sexually explicit conduct where the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct.

- Cloud Computing: The use of computing resources (hardware and software) delivered as a service over a network (typically the Internet).  The "Cloud" allows data in the form of documents, pictures, videos, music and any other medium to be uploaded to an account and accessed by users utilizing various methods such as computers, tablets, smart phones, etc.  It is an off-site storage unit for items typically stored/saved on a computer.

- Cloud Storage: A service model in which data is maintained, managed, backed up remotely, and made available to users over a network (typically the Internet).

- Computer: As defined in Article 156.00 of the Penal Law, is as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device."

- Computer Hardware: Consists of all equipment which can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data.  Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed

disks, external hard drives, floppy disk drives, USB flash drives, and diskettes, and other memory storage devices), mobile telephone devices, wearable computers (including, but not limited to, smart watches and eye wear), portable memory devices, portable electronic music players, smart televisions (including, but not limited to, televisions, set-top boxes, and dongles), media players, video gaming systems; peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors, and related communications devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks) and wireless devices, capable of connecting other computer hardware to the Internet.

- Computer Passwords and Data Security Devices: Information or items designed to restrict access to / or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates a sort of digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software or digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

- Copy: See Image

- File Transfer Protocol (FTP): A standard way of transferring files from one computer to another on the Internet and on other TCP / IP networks. FTP can also refer to various computer network programs that implement file transfer protocol.

- Forensic Analysis Tool: Specialized hardware or software utilized to acquire, parse, and / or analyze data stored on electronic devices.

- Image: An accurate reproduction of information contained on an original physical item, independent of the electronic storage device. "Imaging" or "copying" maintains contents, but attributes may change during the reproduction.

- Internet Protocol Address / IP Address: A unique number used by a computer to access the Internet. IP addresses can be dynamic, meaning the Internet Service Provider (ISP) assigns a different unique number to a computer every time it accesses the Internet. IP addresses might also be static, if an ISP assigns a user's computer a particular IP address which is used each time the computer accesses the Internet.

- Internet Relay Chat (IRC): A multi-user conversation conducted over the Internet in real time. A typical setup involves a single process (the server) forming a central point for clients (or other servers) to connect to, performing the required message delivery/multiplexing and other functions. The structure of the IRC network allows for one-to-one communication via private message as well as chat and data transfer, including file sharing.

- Internet Service Providers (ISPs): Commercial organizations, which provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, eMail, remote storage, and co-location of computers and other communications equipment.

- ISP Records: Records maintained by ISPs pertaining to their subscribers (regardless of whether those subscribers are individuals or entities). These records may include account application information, subscriber and billing information, account access information (often times in the form of log files), eMail communications, information concerning content uploaded and / or stored on or via the ISP's servers, and other information, which may be stored both in computer data format and in written or printed record format. ISPs reserve and / or maintain computer disk storage space on their computer system for their subscribers' use. This service by ISPs allows for both temporary and long-term storage of electronic communications and many other types of electronic data and files.

- mIRC: An IRC client program for Windows operating systems. mIRC provides the user with automated options and tools to allow them to easily communicate within the IRC environment.

- National Center for Missing and Exploited Children (NCMEC); The organization that serves as a centralized cyber tip line as it pertains to exploited and missing children. Electronic service providers (i.e.: Google, Microsoft, Yahoo, AOL, et. Al.) are mandated to report instances of apparent child sexual abuse material and / or child exploitation.

- Reverse Image Search: An Internet search that accepts an image file, or URL to an image file, as an input query and returns results related to the uploaded image or results related to the image associated the provided URL.

- Secure Socket Layer (SSL): An encryption system designed to protect the privacy of data exchanged over the Internet.

- Sexual Conduct: Actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any persons.

- Uniform Resource Locator (URL): An address to a website or file on the Internet (e.g. https://www.example.com/)

- Wi-Fi: Networking device that allows nearby digital devices to connect to a local area network or the Internet via radio waves.

## E.    CHILD SEXUAL ABUSE MATERIAL AND THE INTERNET

Computers and digital technology have become tools of online child exploitation. These tools have changed the way child sexual abuse material is produced, stored, communicated, and distributed as a commodity. For instance:

- Individuals can transfer photographs from a camera onto a computer-readable format with a variety of devices, including scanners, memory card readers, cellular phones, tablet computers, directly from digital cameras, or using the "Cloud".

- Modems and network adapters allow computers to connect to another computer through the use of telephone, cable, or wireless connection. Electronic contact can be made to literally millions of computers around the world.

- The capability of a computer to store images in digital form makes the computer itself an ideal repository for child sexual abuse material. The storage capacity of electronic media used in home computers continues to increase with each passing year. These drives can store very large numbers of visual digital image and video files at very high resolution.

- The Internet, the World Wide Web, and other Internet components afford individuals many different, relatively secure and anonymous venues for obtaining, viewing, and trading child sexual abuse material or for communicating with others to do so or to entice children.

- Individuals can use online resources to retrieve, store, and share child sexual abuse material, including Internet services offered by Google, Facebook, Microsoft, Apple, and Dropbox among others. Online services allow a user to set up accounts providing eMail and messaging services, as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet. Even in cases where online storage is used, evidence of child sexual abuse material can be found on the user's computer in most cases.

- As with most digital technology, computer communications can be saved or stored on hardware and computer storage media. Storing this information can be intentional, i.e., by saving an eMail as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files. However, digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others). Besides electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the Web cache and history files of the browser used. Such information often remains for very long periods of time and is not fully destroyed until overwritten by other data.

- The interaction between software applications and the computer operating systems often results in material obtained from the Internet being stored multiple times, and even in different locations, on a computer hard drive without the user's knowledge. Even if the computer user is sophisticated and understands this automatic storage of information on his computer's hard drive, attempts at deleting the material often fail because the material may be automatically stored multiple times and in multiple locations within the computer media. As a result, digital data that may have evidentiary value to this investigation could exist in the user's computer media despite, and long after, attempts at deleting it. A thorough search of this media could uncover evidence of receipt, distribution, and possession of child sexual abuse material.

- Data that exists on a computer is particularly resilient to deletion. Computer files or remnants of such files can usually be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet or from external media, such as CDs, DVDs, or external hard drives. Electronic files downloaded to a hard drive can be stored for years at little to no cost. Even when such files have been deleted, they can usually be recovered months or years later using readily available forensic tools. When a person "deletes" a file on a home computer, the data contained in the file does not actually disappear;

rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space – that is, in space on the hard drive not allocated to an active file or in unused after a file has been allocated to a set block of storage space – for long periods before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or cache. The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.

## F.    COMPUTERS AND THE EVIDENCE ASSESSMENT PROCESS IN CHILD SEXUAL ABUSE AND CHILD EXPLOITATION CASES

This warrant seeks permission to locate not only computer files that might serve as direct evidence of the crimes described in the warrant, but also for cellular telephones and other evidence that establishes how computers and cellular telephones were used, the purpose of their use, and who used them. Additionally, the warrant seeks information about the possible location of other evidence.

- This application seeks permission to search and seize records that might be found on computers, cellular telephones and peripheral devices, in whatever form they are found. One form in which the records might be found is stored on a computer's hard drive; another form is other electronic media, such as external hard drives. Some of these electronic records might take the form of files, documents, and other user generated data. Other electronic records, as explained below, might take a form that becomes meaningful only upon forensic analysis.

- Although some records called for by this warrant might be found in user generated documents (such as word processor, picture, and movie files), computer hard drives can contain other forms of electronic evidence that are not user generated. In particular, a computer hard drive may contain records of how a computer has been used, the purposes for which it was used, and who has used these records. For instance, I have learned from computer forensic experts that:

  1. Data on the hard drive not currently associated with any file can provide evidence of a file that was once on the hard drive but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file, or when a particular DVD disc was viewed using Windows Media Player, etc.).

  2. Virtual memory paging systems can leave traces of information on the hard drive that show what tasks and processes on the computer were recently in use.

  3. Web browsers, eMail programs, and chat programs store configuration information on the hard drive that can reveal information such as online nicknames and passwords. It can also provide information about who was using the computer, and when they were using the computer.

  4. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices, and the times the computer

was in use.

5. Computer file systems can record information about the dates files were created and the sequence in which they were created. This information may be evidence of a crime, show the existence and location of evidence in other locations on the hard drive, and may provide information about the user of the computer.

6. Further, in finding evidence of how a computer has been used, the purposes for which it was used, and who has used it, sometimes it is necessary to establish a particular thing is not present on a hard drive or, in the case of a multi-user computer, a particular person was not a user of the computer during the time(s) of the criminal activity. For instance, I know when a computer has more than one user, files can contain information indicating dates and times files were created as well as the sequence in which they were created. For example, by reviewing the Internet browser history, such as Index.dat files (a system file that keeps track of historical activity conducted in the Internet Explorer application), link files (.lnk), and thumbs.db (Windows XP) or thumb cache (Windows VISTA) files, the forensic examiner can often determine whether a user actually accessed, or attempted to access, images/videos, and whether that user accessed other information close in time to the file creation dates, times and sequences to establish user identity and exclude others from computer usage during times related to the criminal activity.

7. Evidence of how a digital device has been used, what it has been used for, and who has used it, may be the absence of particular data on a digital device and requires analysis of the digital device as a whole to demonstrate the absence of particular data. Evidence of the absence of particular data on a digital device cannot be segregated from the digital device.

8. The types of evidence described above may be direct evidence of a crime, indirect evidence of a crime indicating the location of evidence or a space where evidence was once located, contextual evidence identifying a computer user, and contextual evidence excluding a computer user. These types of evidence may show ownership, knowledge, and intent. It also may be exculpatory evidence, which I would be required to turn over to the defense in the event charges are lodged.

9. This type of evidence is not "data" that can be segregated, that is, this type of data cannot be abstractly reviewed and filtered by a seizing or imaging agent and then transmitted to investigators. Rather, evidence of this type is a conclusion, based on a review of all available facts and the application of knowledge about how a computer behaves and how computers are used. Therefore, contextual information necessary to understand the evidence described in this affidavit falls within the scope of the warrant.

## G.    CHARACTERISTICS OF COLLECTORS OF CHILD SEXUAL ABUSE MATERIAL

Based on my own knowledge, experience, and training in child exploitation and child sexual abuse material investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know there are certain characteristics common to individuals who have a

sexual interest in children and receive and / or advertise images of child sexual abuse material, including:

- Many individuals who collect child sexual abuse material are persons who have a sexual attraction to children. They receive sexual gratification and satisfaction from sexual fantasies fueled by depictions of children that are sexual in nature.

- Many individuals who collect child sexual abuse material utilize the Internet to search for and share child exploitation materials in the form of images, videos, and other document types. The files themselves, or the remnants of such files, may remain on a user's electronic device, or associated cloud storage account, for months or years after which an Internet search was conducted, a file was downloaded, and / or a file was shared.

- Many individuals who collect child sexual abuse material collect explicit materials, which may consist of photographs, magazines, motion pictures, video tapes, books, slides, computer graphics or other images for their own sexual gratification. Many of these individuals also collect child erotica, which may consist of images or text that do not rise to the level of child sexual abuse material, but which nonetheless fuel their sexual fantasies involving children.

- Many individuals who collect child sexual abuse material often seek like-minded individuals, either in person or via the Internet, to share information and trade depictions of child sexual abuse material and child erotica as a means of gaining status, trust, acceptance and support. The different Internet-based vehicles used by such individuals to communicate with each other include, but are not limited to, peer-to-peer, eMail, bulletin boards, Internet relay chat, newsgroups, instant messaging, social media, and other similar vehicles.

- Many individuals who collect child sexual abuse material maintain books, magazines, newspapers and other writings, in hard copy or digital medium, on the subject of sexual activities with children as a way of understanding their own feelings toward children, justifying those feelings and finding comfort for their illicit behavior and desires. Such individuals rarely destroy these materials because of the psychological support they provide.

- Many individuals who collect child sexual abuse material often collect, read, copy or maintain names, addresses (including eMail addresses), phone numbers, or lists of persons who have advertised or otherwise made known in publications and on the Internet that they have similar sexual interests. These contacts are maintained as a means of personal referral, exchange or commercial profit. These names may be maintained in the original medium from which they were derived, in telephone books or notebooks, on computer storage devices, or on scraps of paper.

- Many individuals who collect child sexual abuse material rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect their collection of illicit materials from discovery, theft, and damage.

## H.    BIOMETRIC SECURITY

I know from my training and experience, as well as from information found in publicly available materials, many mobile devices offer their users the ability to unlock the device via the use of a

fingerprint or facial recognition in lieu of a numeric or alphanumeric passcode or password. Other devices at the target location may also have this feature known as a biometric scanner.

If a user enables a biometric scanner on a given device, he or she may be able to register one or more fingerprints, as well as facial scans, that can be used to unlock that device. The user can then use any of the registered fingerprints to unlock the device by pressing the relevant finger(s) to the biometric scanner or in the case of facial scans, simply by looking at the device. In my training and experience, users of devices that offer a biometric scanner often enable it because it is considered a more convenient way to unlock the device than by entering a numeric or alphanumeric passcode or password, as well as a more secure way to protect the contents of the device. This is particularly true when device user(s) are engaged in criminal activities and thus have a heightened concern about securing the contents of the device.

Under certain circumstances, a passcode or password must be used to unlock a device even if a biometric scanner has been enabled. Depending upon the device, the passcode may be required after a specified period-of-time has passed since the last time the device was unlocked by either a biometric scanner and / or passcode. Thus, in the event law enforcement encounters a locked device, the opportunity to unlock the device via a biometric scanner exists only for a limited period of time. A biometric scanner may also not unlock the device if:

1. The device has been turned off or restarted.
2. The device has received a remote lock command.
3. A specified number of unsuccessful attempts to unlock the device via a biometric scanner are made.

The passcode or password that would unlock a particular device may not be found during the search of a target location. Thus, it will likely be necessary to press the finger(s) of the user(s) of the device(s) found during the search to the biometric sensor, or make the user(s)' face visible to the scanner, in an attempt to unlock the device for the purpose of executing the search requested by this application. Attempting to unlock the relevant device(s) via a biometric sensor with the fingerprints or facial scan of the user(s) is necessary because the government may not otherwise be able to access the data contained on those devices for the purpose of executing the search requested by this application.

In my training and experience, the person in possession of a device, or who has the device among his or her belongings at the time the device is found, is likely a user of the device. However, a person may not be the only user whose biometric data will unlock the device via a biometric scanner. It is also possible the person in possession of the device is not actually a user of that device. Furthermore, I know in some cases it may not be possible to know with certainty who is the user of a given device, such as if the device is found in a common area of a premises without any identifying information on the exterior of the device. It will likely be necessary for law enforcement to have the ability to require any occupant of the target location press their finger(s) against the touch sensor, or make their face visible, to locked device(s) found during the search of the target location / person in an attempt to identify the user(s) and unlock the device(s) via a biometric scanner.

Although I do not know which of a given user's fingerprints is capable of unlocking a particular device, based on my training and experience I know it is common for a user to unlock a biometric scanner-enabled device via the fingerprints on thumbs or index fingers. In the event law enforcement is unable to unlock the device(s) found at the targets location within the limited number of attempts

permitted by the device, this often will result in the device requiring the entry of a password or passcode before it can be unlocked.

I.    **ALLEGATIONS OF FACT IN SUPPORT OF STATEMENT THAT THERE IS PROBABLE CAUSE TO BELIEVE PROPERTY OF A KIND OR CHARACTER DESCRIBED IN SECTION 690.10 OF THE CRIMINAL PROCEDURE LAW MAY BE FOUND IN OR UPON A DESIGNATED OR DESCRIBED PLACE, VEHICLE, OR PERSON**

Investigator Zachary R. Niederriter, being duly sworn, deposes and states:

- I am the applicant herein and am a public servant of the kind specified in Section 690.05, Subdivision 1 of the Criminal Procedure Law, my title being that of Investigator with the Division of New York State Police. I am locally assigned to NYSP Ithaca located at 1850 Dryden Rd, Freeville, NY, 13068. I have been a sworn police officer with the New York State Police since July 17th, 2017. As part of my tenure as a police officer, your affiant has attended numerous federal, state, and local training workshops and seminars. I have also received training at the New York State Police Academy as it pertains to basic police procedures. As a police officer, your affiant has experience conducting traditional criminal investigations / police operations which have resulted in the arrest and conviction of those responsible. I also completed the New York State Zone 4 Police Academy at the Broome County Sheriff's Office, as I was employed by the Binghamton Police Department for approximately two and a half years. I have been involved in a wide range of investigations, which include murder, assaults, larcenies, sex offenses, weapons possession, narcotics, and burglaries. I have been involved in the investigation of offenses relating to computers and the Internet. I have received training on the subject of online criminal investigation, the distribution, trading and downloading/sharing of child pornography, and computer evidence handling.

- Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included every fact known to me concerning this investigation. I have set forth only the facts I believe are necessary to establish probable cause to believe that evidence of violations of New York State Penal Law Sections 263.15 (Promoting a Sexual Performance by a Child), 263.16 (Possessing a Sexual Performance by a Child), and 260.10 (Endangering the Welfare of a Child).

- We, the New York State Police Ithaca, received a complaint on January 1st, 2025, by a ▇▇▇▇▇ and ▇▇▇▇▇▇▇▇ stating a male they know as David Pastorello, DOB 12/11/1982, attempted to receive naked photographs, more specifically, the vagina area, from their 11 year old daughter, ▇▇▇▇▇ DOB ▇▇▇▇ via Snapchat. Interviews from ▇▇▇▇▇▇ and her mother ▇▇▇▇▇▇ provided information that following the New Years Eve ball drop, ▇▇▇▇▇▇▇ began receiving messages from the username "Biggest", requesting pictures of her vagina area, using the cat emojie and "pic" following the emojie. The username also messaged ▇▇▇▇▇▇ stating "Psy Pic". The same username has messaged ▇▇▇▇ previously on numerous occasions attempting to pick up ▇▇▇ with his vehicle, near her residence, attempting to get her to sneak out of the house in the middle of the night, as he was doing that night of January 1st, 2025. At one point during their

conversations, ███████ asked the username "Biggest" their name and they replied "Dave". ███████ secured screenshots of the above stated conversations which are in the custody of the New York State Police. ███████ stated to Investigator Jamie Cuff, that she took her daughter's phone, that night of January 1st, 2025, after seeing the messages and began messaging back pretending to be her daughter. "Biggest" advised ███████ to go to the bus stop near their house and she would be picked up. ███████ stated that she knows David Pastorello to drive a while Honda Accord, from their past relationship. ███████ stated that after "Biggest" advised they were on the way, a short time later she observed a White Honda Accord drive by their house two times. Investigation confirmed that a 2007 white Honda Accord bearing New York registration LPR1112, is registered to David Pastorello. A criminal history of David Pastorello shows that he has been arrested eleven times, by various police agencies, several of which are either possessing or viewing child porn, disseminating indecent material to minors, acting in a manner to injure a child less then 17 years old, endangering the welfare of a child, public lewdness, stalking and attempting to lure a child into a vehicle or building.

- On October 19th, 2024, Pastorello was found with a 18 year old female, with the mental capacity of a 15 year old, that was reported missing and the victim of an active AMBER alert. Pastorello admitted to meeting the female in a chatroom online. Pastorello drove down near the New York City area to pick the female up and bring her back to his apartment located at 390 Floral Ave in the City of Ithaca. Pastorello admitted to having sex with the female numerous times, even duct taping her wrists, but claimed the sex was consensual. The female stated to officers that she wanted to be with Pastorello but was taken into custody for Mental Hygiene Law 9.41. During the interview Pastorello admitted to watching child pornography daily on a browser by the name of Tor Browser.

- On May 14th, 2024, David Pastorello was accused of sending a picture of his erect penis to minor via snapchat. A search warrant was conducted by NYSP personal, locating the picture sent to the minor, as well as 47 images of child sexual abuse on David Pastorello's cell phone, which led to the arrest of David Pastorello for Indecent Material to a Minor in the 1st degree and Endangering the Welfare of a Child.

- On March 3rd, 2024.the Cortland Police Department received a Luring of a Child complaint involving Pastorello, messaging a 14-year-old female via text message asking for pictures of her, stating "not naked but she can if she wants to" and commenting on how beautiful she is despite her age. Pastorello asked the female to sneak out of the house and that he would have her home by 5:00AM. Once advised to stop messaging the female, Pastorello began messaging a second female in the school attempting to pass messages to the original female as well as sending a picture of his penis. Throughout the investigation messages stating, "I actually like her I'm not just trying to fuck her", "I can't help it I feel bad cuz youre younger or whatever but you're gorgeous" were located by the investigating officers.

- On October 26th, 2023, Pastorello was arrested by the New York State Police for Endangering the Welfare of a Child, after a complaint was received that Pastorello was messaging his daughter's best friend, who was 14 years old at the time, on Instagram and TikTok. Pastorello advised the girl not to tell his daughter and began offering to buy her marijuana.

## J.    CONCLUSION AND SPECIFIC REQUEST

Based upon the investigation your Affiant has conducted, your Affiant has probable cause to believe a computer, or other Internet connected devices, located on the person of David Pastorello born December 11th, 1982, and within the residence located at 390 Floral Ave Apt 5, in the City of Ithaca, County of Tompkins, State of New York may contain documents, images, and / or videos of child sexual abuse material, and has downloaded or made these documents, images, and / or videos of child sexual abuse material available for distribution via the Internet, in violation of Sections 263.15 and 260.10 of the Penal Law.  Your Affiant further states there is reason to believe evidence may be found at the residence located on the person of David Pastorello, born December 11th, 1982, the vehicle of David Pastorello, bearing NY Registration LPR1112, and the residence located at 390 Floral Ave, Apt 5 in the City of Ithaca, County of Tompkins, State of New York constitutes evidence of this crime.  Based upon the training I have received, as well as experience conducting child sexual abuse material investigations that have led to the execution of search warrants and subsequent examinations of computer systems, I have learned many people who buy, produce, trade, or sell child sexual abuse material rarely, if ever, dispose of their sexually explicit materials, and treat these materials as "prized possessions."  In addition, based upon my experience in the field of computer crime investigations, I know information, including documents, images, and / or videos can easily exist on a computer for days, months, even years after it is "deleted" by the user.  This information can be acquired from the computer during a forensic examination of the system.

I am also aware from my training and experience with investigations involving child sexual abuse material that said material, when stored in a digital format, can easily be transferred between one or more devices and / or saved on storage media as small as a microSD card.  I am also aware from my training and experience that persons residing in, or visiting, a residence often utilize the Wi-Fi in the residence to access the Internet and / or communicate with other persons via their mobile devices on the same network.  Such communication can include the transfer of digital files.  Mobile devices and small digital storage media can easily be concealed on a person.  Therefore, authorization is requested to search any person present in the residence located at 390 Floral Ave Apt 5, in the City of Ithaca, County of Tompkins, State of New York at the time of the search warrant execution for the purpose of locating devices and / or storage media which may contain child sexual abuse material.

Your affiant is also seeking to examine the data contained on any device requested and authorized to be searched by this application, and subsequent warrant, without the constraints of a timeline.  The date and time associated with recovered artifacts is directly dependent on the date and time settings of the device at the time the artifacts were created, accessed, or modified.  These settings can easily be manipulated by even a novice; a user can decide at any time to adjust their device settings to a different time zone or even a different date entirely.  Also, many applications and service providers do not store timestamp data.  It is common practice for service providers such as Facebook and Twitter to remove all meta data embedded in a file upon upload to their servers; this includes both date and time information.  Finally, date and time information is often lost upon deletion of a file.  Deleted files and their remnants are often recovered without any associated date and time information.

I further know conducting a search of a computer system, documenting the search, and making a forensic image or evidentiary copy is a lengthy process.  It is necessary to determine no security devices are in place that could cause the destruction of evidence during the search.  In some cases, it is impossible to even conduct the search without expert assistance.  Since computer evidence is extremely vulnerable to tampering or destruction, examination will require removal of the system

from its present location and transferal to our Computer Forensic Laboratory at the New York State Police Troop C Headquarters in Unadilla, New York, or the Computer Forensic Laboratory at the New York State Police Division Headquarters in Albany, New York, or a designee of these laboratories. These laboratories, or their designee, will assist in retrieving the records and data authorized to be seized in a controlled environment.

Your Affiant recognizes some of the above-described property is data that will be contained on said computer in electronic and machine-readable media, which is not readable, by your deponent in its present state. By this application your Affiant requests authorization for searching members to seize, examine, listen to, read, view, and maintain the above-described property and to convert it to humanly readable and viewable form as necessary.

Wherefore, I respectfully request the Court issue a search warrant for the person(s) of David Pastorello, born December 11th, 1982, the residence of David Pastorello, and the vehicle of David Pastorello, bearing NY Registration LPR1112 and any occupants therein, located at 390 Floral Ave, Apt 5 in the City of Ithaca, County of Tompkins, State of New York in order it be ascertained if any such property constitutes, substantiates, or supports the violations of Sections 263.15, 263.16 and 260.10 of the Penal Law of the State of New York.

I request the Court authorize executing police officers to, if necessary, press the fingers or capture a facial image of any person located within the premises for the purpose of attempting to unlock any computer or electronic device secured via a biometric lock to search and examine the contents therein as requested by this search warrant application.

Additionally, I request the Court provide the authority for executing police officers to utilize the physical means necessary to obtain access to any secure containers, such as safes and lockboxes, which may contain devices or other materials authorized to be seized, searched, examined, and held as requested by this search warrant application. These means may result in irreparable damage to the physical containers and / or locking devices.

Furthermore, it is requested all property seized in the aforementioned described manner be held for analysis and evaluation by the Division of State Police of the State of New York or their designee. Authorization is also requested to employ advanced digital forensic processes, if necessary, for the purpose of repairing damaged electronic devices and / or bypassing security measures employed by the user or device manufacturer to restrict data access. These processes may damage, alter, or render a device inoperable.

Investigator Inv. Zachary R. Niederriter
New York State
Division of State Police

Subscribed and sworn to before me
This day 6 of May at 1 : 14 AM (PM)

Honorable Joseph R. Cassidy
Tompkins County Court
Sitting as a Local Criminal Court

**SEARCH WARRANT**



CITY OF ITHACA, COUNTY OF TOMPKINS, STATE OF NEW YORK

**TO ANY MEMBER OF THE NEW YORK STATE POLICE, THE UNITED STATES DEPARTMENT OF JUSTICE, THE UNITED STATES DEPARTMENT OF HOMELAND SECURITY, AND / OR ANY OTHER POLICE OFFICER IN THE STATE OF NEW YORK**

**YOU ARE HEREBY DIRECTED TO SEARCH:**

The person(s) of David Pastorello, born December 11th, 1982; The residence located at 390 Floral Ave, Apt 5, in the City of Ithaca, County of Tompkins, State of New York, including the NY registration LPR1112 a white Honda Accord, which is registered to David Pastorello, and any areas the resident(s) may have custody or control of such as, but not limited to, the basement, attic, garage, other curtilage, and vehicles on the property; and any computers and electronic devices; and any persons present at the residence, as described below, that may be located during execution of the search warrant.



Image 1



Image 2

**SEARCH WARRANT**



*Tompkins County Court*

CITY OF ITHACA, COUNTY OF TOMPKINS, STATE OF NEW YORK

**FOR THE FOLLOWING PROPERTY:**

The property referred to and authorized to be seized, searched, held, and subsequently examined is believed to contain evidence that will constitute, substantiate, or support violations of Sections 263.15 (Promoting a Sexual Performance by a Child), 263.16 (Possessing a Sexual Performance by a Child) and 260.10 (Endangering the Welfare of a Child) of the Penal Law of the State of New York, and this property is further described as follows:

1. All computers, computer programs, storage media, computer data and / or computer network information as those terms are defined in Article 156.00 of the Penal Law.

2. All computers, central processing units, internal and external drives, storage units or media, terminals, and video display units, together with peripheral equipment such as keyboards, printers, modems, network routers and switches, scanners, and digital cameras.

3. All computing or data processing software, or data including, but not limited to hard disks, optical discs, floppy disks, magnetic tapes, and integral random-access memory (RAM) or read-only memory (ROM) units which may reveal evidence which substantiates violations of the aforementioned New York State Penal Law Statutes.

4. All Internet capable devices, such as cellular phones, tablet computers, wearable computers, smart phones, smart televisions, media players, and gaming systems that allow access to the Internet and allows for the transmission of data in violation of Sections 263.15, and 263.16 of the New York State Penal Law.

5. The following records and documents, whether printed copy, contained or stored on a computer, cellular device, optical disc, magnetic tape, diskette, photo-optical device, cellular phone, tablet computer, wearable computer, smart phone, smart television, media player, and / or gaming system that allows access to the Internet or other storage medium:
   a. All access numbers, passwords, personal identification numbers (PINS), logs, notes, memoranda, and correspondence relating to computers, electronic and voice mail systems, Internet addresses and / or related contacts.
   b. All computing or data processing literature, including, but not limited to printed copy, instruction books, notes, papers, or listed computer programs, in whole or in part.
   c. All audio or video cassette tape recordings, books, magazines, periodicals, or other recorded or printed material, the possession of which constitutes a violation of Sections 263.15 and 263.16 of the Penal Law of the State of New York.
   d. All photographs, videos, and documents depicting sexual conduct by a child and / or minors engaged in sexually explicit conduct.
   e. Internet history, including search terms and visits to websites that offer visual depictions of minors engaged in sexually explicit conduct.

**SEARCH WARRANT**



CITY OF ITHACA, COUNTY OF TOMPKINS, STATE OF NEW YORK

f.  All records or correspondence relating to the possession, transmission, collection, trade, or production of the aforementioned photographs, videos, and / or documents whether printed or in the form of Short Message Service (SMS), Multimedia Messaging Service (MMS), chats, and Instant Messages (IM) such as iMessages, Facebook Messenger, Google Hangouts, Snapchat, etc.

g.  All child erotica, including photographs of children that are not sexually explicit, drawings, sketches, fantasy writings and notes, and evidence assisting authorities in identifying such children.

h.  Computer records and evidence identifying who the particular user was who received, downloaded, possessed, or viewed any child sexual abuse material found on any computer or computer media (evidence of attribution), or who attempted to do any of the foregoing, and how the computer was used to effectuate that activity.

- You are directed to seize any property pursuant to the above section of this warrant and, without unnecessary delay, return said property to this court together with this warrant and a written inventory of such property subscribed and sworn to by you.
- You are authorized, if necessary, to employ advanced digital forensic processes for the purpose of repairing damaged electronic devices and / or bypassing security measures employed by the user or device manufacturer to restrict data access. These processes may damage, alter, or render a device inoperable.
- You are authorized to forward property seized in the execution of this warrant for forensic examination.
- You are authorized to convert the forensic data from machine readable to human readable form.
- You are authorized to press the fingers, capture a facial image, or utilize any other biometric characteristic, of any person located within the premises for the purpose of attempting to unlock any computer or electronic device via a biometric lock to search and examine the contents therein as authorized by this warrant.
- You are authorized to utilize the physical means necessary to obtain access to any secured containers, such as safes and lockboxes, which may contain devices or other materials to be seized, searched, examined, and held as authorized by this warrant.
- You are directed not to execute this warrant more than ten days after issuance.
- You are directed to execute this warrant between the hours of 6:00 am and 9:00 pm.

Pursuant to the provisions of Section 690.55, Sub. 1B of the Criminal Procedure Law of the State of New York, I do hereby direct the personal property / evidence taken pursuant to a duly executed search warrant from the aforementioned person and stated residence, and in lieu of delivering said property / evidence to this court, I am directing this property / evidence be retained in the possession of, and held in the custody of, the Division of State Police of the State of New York or their designee, subject to any further order of the court as provided by the provisions of Section 690.55, Sub. 1B of the Criminal Procedure Law of the State of New York.

**SEARCH WARRANT**

## Tompkins County Court

CITY OF ITHACA, COUNTY OF TOMPKINS, STATE OF NEW YORK

This search warrant issued the __6__th day of ~~April~~ May, 2025
Tompkins County, New York

Honorable Joseph R. Cassidy
Tompkins County Court
Sitting as a Local Criminal Court

**ATTACHMENT A-1**

<u>Property to Be Searched</u>

This warrant applies to the following electronic devices, to include any attached computer or electronic storage media including SD cards, which is currently possessed by the Federal Bureau of Investigation ("FBI") at 200 McCarty Ave., Albany, New York.

- One (1) Motorola XT2413V cell phone, IMEI 355179434601863, seized from David Pastorello's person on May 8, 2025.



**ATTACHMENT B-1**

**Particular Things to be Seized**

Items of evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely violations of 18 U.S.C. §§ 2422(b) (enticement of a minor):

**Computers and Electronic Media**

1. The authorization includes the search of electronic data to include deleted data, remnant data and slack space. The seizure and search of computers and electronic media will be conducted in accordance with the affidavit submitted in support of this warrant.

2. Computer hardware, meaning any and all computer equipment, including any electronic storing devices that are capable of collecting, analyzing, creating, displaying, converting, storing, concealing, or transmitting electronic, magnetic, optical, or similar computer impulses or data. Included within the definition of computer hardware is any data processing hardware (such as central processing units and self-contained laptop or notebook computers); internal and peripheral storage devices (such as thumb drives, flash drives, SD (secure digital) cards, fixed disks, external and internal hard drives and disks, floppy disk drives and diskettes, tape drives and tapes, optical and compact storage devices, and other memory storage devices); peripheral input/output devices (such as keyboards, printers, scanners, plotters, video display monitors, and optical readers); related communications devices (such as modems, cables and connections, recording equipment, RAM and ROM units, acoustic couplers, automatic dialers, speed dialers, programmable telephone dialing, or signaling devices, and electronic tone generating devices); and any devices, mechanisms, or parts that can be used to restrict access to such hardware (such as physical keys and locks).

3. Computer software, meaning any and all data, information, instructions, programs, or program codes, stored in the form of electronic, magnetic, optical, or other media, which is capable of being interpreted by a computer or its related components. Computer software may also include data, data fragments, or control characters integral to the operation of computer software, such as operating systems, software, application software, utility programs, compilers, interpreters, communications software, and other programming used or intended to be used to communicate with computer components.

4. Computer-related documentation, meaning any written, recorded, printed, or electronically stored material that explains or illustrates the configuration or use of any seized computer hardware, software, or related items.

5. Computer passwords and data security devices, meaning any devices, programs, or data, whether themselves in the nature of hardware or software, that can be used or are designed to be used to restrict access to, or to facilitate concealment of, any computer hardware, computer software, computer related documentation, or electronic data records. Such items

22

include, but are not limited to, data security hardware (such as encryption devices, chips and circuit boards); passwords; data security software or information (such as test keys and encryption codes); and similar information that is required to access computer programs or data, or to otherwise render programs or data into usable form.

6. Any computer or electronic records, documents and materials referencing or relating to the above-described offenses. Such records, documents or materials, as well as their drafts or modifications, may have been created or stored in various formats, including, but not limited to, any hand-made form (such as writing or marking with any implement on any surface, directly or indirectly); any photographic form (such as microfilm, microfiche, prints, slides, negatives, video tapes, motion pictures, or photocopies); any mechanical form (such as photographic records, printing or typing); any electrical, electronic or magnetic form (such as tape recordings, cassettes, compact disks); or any information on any electronic or magnetic storage device (such as thumb drives, flash drives, SD (secure digital) cards, floppy diskettes, hard disks, CD-ROMs, DVDs, optical disks, printer buffers, soft cards, memory calculators, electronic dialers, or electronic notebooks), as well as printouts or readouts from any magnetic storage device.

7. Any electronic information or data, stored in any form, which has been used or prepared for use either for periodic or random backup (whether deliberate, inadvertent, or automatically or manually initiated), or any computer or computer system. The form that such information might take includes, but is not limited to, thumb drives, flash drives, floppy diskettes, fixed hard disks, removable hard disk cartridges, tapes, laser disks, CD-ROM disks, DVDs, video cassettes, and other media capable of storing magnetic or optical coding.

8. Any electronic storage device capable of collecting, storing, maintaining, retrieving, concealing, transmitting, and using electronic data used to conduct computer or Internet-based communications, or which contains material or data, obtained through computer or Internet-based communications, including data in the form of electronic records, documents and materials, including those used to facilitate interstate communications, included but not limited to telephone (including mobile telephone) and Internet Service Providers. Included within this paragraph is any information stored in the form of electronic, magnetic, optical, or other coding, on computer media, or on media capable of being read by a computer or computer-related equipment, such as thumb drives, flash drives, SD (secure digital) cards, fixed disks, external hard disks, removable hard disk cartridges, CDs, DVDs, floppy disk drives and diskettes, tape drives and tapes, optical storage devices, laser disks, or other memory storage devices.

## Computer and Internet Records

9. Records of personal and business activities relating to the operation and ownership of the computer systems, such as telephone records, notes (however and wherever written, stored or maintained), books, notes, and reference materials.

10. Any records or documents pertaining to accounts held with Internet Service Providers or of Internet use.

11. Records of address or identifying information for the target of the investigation and any personal or business contacts or associates of his, (however and wherever written, stored or maintained), including contact lists, buddy lists, email lists, ICQ addresses, IRC names (a.k.a., "Nics"), user ID's, eID's (electronic ID numbers) and passwords.

12. Documents and records, in any form or format, regarding the identity of any person utilizing phone number 607-423-3826.

**Materials Relating to Enticement of a Minor**

13. Any and all visual depictions of Minor Victim 1 ("MV1") including, but not limited to, sexually explicit images of MV1.

14. Any and all chats, chat logs, emails, and other text documents, describing or relating to sexually explicit conduct with children, as well as fantasy writings regarding, describing, or showing a sexual interest in children.

15. Any and all notebooks and any other records reflecting personal contact, communication with, or any other activities with minors.

16. Evidence of chat communications between the device's operator and MV1 or the undercover law enforcement officer, to include images that were exchanged.

17. Records evidencing intent, knowledge, or plan to create and/or possess visual depictions of MV1 engaged in sexually explicit conduct and/or to travel or transport a minor with intent to engage in criminal or illicit sexual activity, and/or to coerce, persuade, or entice a minor into engaging in unlawful sexual activity.

18. Records evidencing that David Pastorello used a facility of interstate commerce, including the internet or a mobile communication device and/or application, to knowingly persuade, induce, entice, or coerce a minor to engage in sexual activity that would violate federal law or the laws of the state of New York.

19. Records evidencing the ownership or attribution of the device listed in Attachment A-1, and records evidencing the identity of the individual(s) operating the device at times when the device was utilized to engage in communications with children.

As used above, the terms "records" include all forms of creation or storage, including any form of computer or electronic storage (such as hard discs or other media that can store data).

This authorization includes the digital extraction of data from the item listed in Attachment A-1 and authorizes a review of the device and electronically stored information seized or copied pursuant to this warrant to locate evidence, fruits, and instrumentalities described in the warrant.

The review of this electronic evidence data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

During the search of the device described in Attachment A-1, photographs may be taken to record the condition thereof.

**ATTACHMENT A-2**

<u>Property to Be Searched</u>

This warrant applies to the following electronic devices, to include any attached computer or electronic storage media including SD cards, which is currently possessed by the Federal Bureau of Investigation ("FBI") at 200 McCarty Ave., Albany, New York.

- One (1) TCL cell phone, IMEI 016500004699782, seized from David Pastorello's person on July 29, 2025.



## ATTACHMENT B-2

### Particular Things to be Seized

Items of evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely violations of 18 U.S.C. §§ 2422(b) (enticement of a minor), and 2252A(a)(2)(A) and 2252A(a)(5)(B) (distributing and possessing child pornography)):

## Computers and Electronic Media

1. The authorization includes the search of electronic data to include deleted data, remnant data and slack space. The seizure and search of computers and electronic media will be conducted in accordance with the affidavit submitted in support of this warrant.

2. Computer hardware, meaning any and all computer equipment, including any electronic storing devices that are capable of collecting, analyzing, creating, displaying, converting, storing, concealing, or transmitting electronic, magnetic, optical, or similar computer impulses or data. Included within the definition of computer hardware is any data processing hardware (such as central processing units and self-contained laptop or notebook computers); internal and peripheral storage devices (such as thumb drives, flash drives, SD (secure digital) cards, fixed disks, external and internal hard drives and disks, floppy disk drives and diskettes, tape drives and tapes, optical and compact storage devices, and other memory storage devices); peripheral input/output devices (such as keyboards, printers, scanners, plotters, video display monitors, and optical readers); related communications devices (such as modems, cables and connections, recording equipment, RAM and ROM units, acoustic couplers, automatic dialers, speed dialers, programmable telephone dialing, or signaling devices, and electronic tone generating devices); and any devices, mechanisms, or parts that can be used to restrict access to such hardware (such as physical keys and locks).

3. Computer software, meaning any and all data, information, instructions, programs, or program codes, stored in the form of electronic, magnetic, optical, or other media, which is capable of being interpreted by a computer or its related components. Computer software may also include data, data fragments, or control characters integral to the operation of computer software, such as operating systems, software, application software, utility programs, compilers, interpreters, communications software, and other programming used or intended to be used to communicate with computer components.

4. Computer-related documentation, meaning any written, recorded, printed, or electronically stored material that explains or illustrates the configuration or use of any seized computer hardware, software, or related items.

5. Computer passwords and data security devices, meaning any devices, programs, or data, whether themselves in the nature of hardware or software, that can be used or are designed to be used to restrict access to, or to facilitate concealment of, any computer hardware,

computer software, computer related documentation, or electronic data records. Such items include, but are not limited to, data security hardware (such as encryption devices, chips and circuit boards); passwords; data security software or information (such as test keys and encryption codes); and similar information that is required to access computer programs or data, or to otherwise render programs or data into usable form.

6. Any computer or electronic records, documents and materials referencing or relating to the above-described offenses. Such records, documents or materials, as well as their drafts or modifications, may have been created or stored in various formats, including, but not limited to, any hand-made form (such as writing or marking with any implement on any surface, directly or indirectly); any photographic form (such as microfilm, microfiche, prints, slides, negatives, video tapes, motion pictures, or photocopies); any mechanical form (such as photographic records, printing or typing); any electrical, electronic or magnetic form (such as tape recordings, cassettes, compact disks); or any information on any electronic or magnetic storage device (such as thumb drives, flash drives, SD (secure digital) cards, floppy diskettes, hard disks, CD-ROMs, DVDs, optical disks, printer buffers, soft cards, memory calculators, electronic dialers, or electronic notebooks), as well as printouts or readouts from any magnetic storage device.

7. Any electronic information or data, stored in any form, which has been used or prepared for use either for periodic or random backup (whether deliberate, inadvertent, or automatically or manually initiated), or any computer or computer system. The form that such information might take includes, but is not limited to, thumb drives, flash drives, floppy diskettes, fixed hard disks, removable hard disk cartridges, tapes, laser disks, CD-ROM disks, DVDs, video cassettes, and other media capable of storing magnetic or optical coding.

8. Any electronic storage device capable of collecting, storing, maintaining, retrieving, concealing, transmitting, and using electronic data used to conduct computer or Internet-based communications, or which contains material or data, obtained through computer or Internet-based communications, including data in the form of electronic records, documents and materials, including those used to facilitate interstate communications, included but not limited to telephone (including mobile telephone) and Internet Service Providers. Included within this paragraph is any information stored in the form of electronic, magnetic, optical, or other coding, on computer media, or on media capable of being read by a computer or computer-related equipment, such as thumb drives, flash drives, SD (secure digital) cards, fixed disks, external hard disks, removable hard disk cartridges, CDs, DVDs, floppy disk drives and diskettes, tape drives and tapes, optical storage devices, laser disks, or other memory storage devices.

## Computer and Internet Records

9. Records of personal and business activities relating to the operation and ownership of the computer systems, such as telephone records, notes (however and wherever written, stored or maintained), books, notes, and reference materials.

10. Any records or documents pertaining to accounts held with Internet Service Providers or of Internet use.

11. Records of address or identifying information for the target of the investigation and any personal or business contacts or associates of his, (however and wherever written, stored or maintained), including contact lists, buddy lists, email lists, ICQ addresses, IRC names (a.k.a., "Nics"), user ID's, eID's (electronic ID numbers) and passwords.

12. Documents and records, in any form or format, regarding the identity of any person utilizing phone numbers 607-944-6067 and 607-423-3826.

## Materials Relating to Enticement of a Minor

13. Any and all visual depictions of Minor Victim 1 ("MV1") including, but not limited to, sexually explicit images of MV1.

14. Any visual depictions of a minor engaged in sexually explicit conduct, as defined by Title 18, United States Code, Section 2256, and any visual depictions involving children that are sexually suggestive or in which children are partially or fully nude.

15. Records concerning the creation or possession of visual depictions of sexually explicit conduct involving a child and evidence of how any such visual depiction(s) were created or possessed, including evidence of what device(s) was used to create/possess the visual depiction(s) and who was responsible for the creation/possession, including evidence of attribution for any device(s) used to create/possess such material.

16. Records evidencing a sexual interest in children and/or child pornography, including an interest in visual depictions of child sexual abuse; any and all chats, chat logs, emails, and other text documents, describing or relating to sexually explicit conduct with children; as well as fantasy writings regarding, describing, or showing a sexual interest in children.

17. Any and all notebooks and any other records reflecting personal contact, communication with, or any other activities with minors.

18. Evidence of chat communications between the device's operator and MV1 or the undercover law enforcement officer, to include images that were exchanged.

19. Records evidencing intent, knowledge, or plan to create and/or possess visual depictions of any child, including MV1, engaged in sexually explicit conduct and/or to travel or transport a minor with intent to engage in criminal or illicit sexual activity, and/or to coerce, persuade, or entice a minor into engaging in unlawful sexual activity.

20. Records evidencing that David Pastorello used a facility of interstate commerce, including the internet or a mobile communication device and/or application, to knowingly persuade, induce, entice, or coerce a minor to engage in sexual activity that would violate federal law or the laws of the state of New York.

29

As used above, the terms "records" include all forms of creation or storage, including any form of computer or electronic storage (such as hard discs or other media that can store data).

This authorization includes the digital extraction of data from the item listed in Attachment A-2 and authorizes a review of the device and electronically stored information seized or copied pursuant to this warrant to locate evidence, fruits, and instrumentalities described in the warrant. The review of this electronic evidence data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

During the search of the device described in Attachment A-2, photographs may be taken to record the condition thereof.